# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER CALHOUN, | ) | 3:23-CV-00715 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANGEL QUIROS, ET AL., | ) | |
| *Defendants*. | ) | December 13, 2023 |

## <u>INITIAL REVIEW ORDER</u>

*Pro se* plaintiff Christopher Calhoun, a sentenced inmate currently incarcerated at Cheshire

Correctional Center ("Cheshire"), filed this action pursuant to 42 U.S.C. § 1983.  He names sixteen

defendants:    Commissioner  Angel  Quiros,  Doctor  Freston,  Lieutenant  Laprey,  Deputy

Commissioner of Operations John/Jane Doe, Deputy Commissioner of Administration John/Jane

Doe, Lieutenant Roy, Warden Bowles, Deputy Warden of Operations at Northern Correctional

Institution John/Jane Doe, Deputy Warden of Administration at Northern Correctional Institution

John/Jane Doe, Counselor Sanders, Captain Danneck, Captain Papoosha, Captain McCreary,[1]

Director of Security Antonio Santiago, Initial SRG Disciplinary Hearing Officer John Doe, and

Initial SRG Disciplinary Investigator John Doe.  Plaintiff sues all Defendants in their official and

individual capacities.   Plaintiff asserts First Amendment claims for violation of his rights to

freedom of association and speech, Eighth Amendment claims for violation of his right to be free

from cruel and unusual punishment, and Fourteenth Amendment claims for denial of due process.

Plaintiff seeks compensatory and punitive damages from Defendants in their individual capacities,

as well as injunctive relief.

---

[1] Plaintiff names this defendant as "Mcreary" in the case caption and "McCreary" within the body of the complaint.
As the second spelling seems more likely, the Court uses that spelling in this order.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

## I.     FACTUAL BACKGROUND

While the Court does not set forth all of the facts alleged in Plaintiff's complaint,[3] it summarizes his basic factual allegations here to give context to its ruling below.

The incidents underlying this action occurred while Plaintiff was confined at MacDougall-Walker Correctional Institution ("MacDougall"), Northern Correctional Institution ("Northern"),

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[3] Plaintiff filed three purported "exhibits" to his complaint between one and three months after filing his complaint. *See* ECF Nos. 12-14. These include photographs, inmate grievances, disciplinary reports, and medical reports. *See id.* For purposes of this Initial Review Order, the Court has not considered these exhibits, as they were not properly presented to the Court. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (noting that, for purposes of deciding a motion to dismiss, a Court "*may*" consider documents that are attached to the complaint, incorporated by reference, or "integral" to the complaint) (emphasis added). The Court notes that this decision does not impact the outcome of this ruling, as, having reviewed the exhibits, they do not alter the conclusions reached herein. The Court may revisit this decision and consider the exhibits at a later stage, subject to any arguments Defendants or Plaintiff may make in a future motion.

and Corrigan Correctional Center ("Corrigan").[4]  Compl., ECF No. 1 at 6.

On September 2, 2020, Plaintiff was issued a Disciplinary Report for Security Risk Group ("SRG") Affiliation, and removed from the general population to a restrictive housing unit.  *Id.* at 8.  This was Plaintiff's first such disciplinary report.  *Id.*  The Disciplinary Investigator, Defendant John Doe, told Plaintiff that he could receive harsh sanctions, including loss of visiting and telephone privileges, if he did not plead guilty to the disciplinary charge.  *Id.*

Plaintiff did not want to plead guilty, but the Disciplinary Investigator told the restrictive housing staff not to permit him to rest or sleep.  *Id.*  In addition, the restrictive housing unit was very noisy which also prevented Plaintiff from sleeping.  *Id.*  After two days in these conditions, Plaintiff pleaded guilty before the Disciplinary Investigator.  *Id.*  The Investigator told Plaintiff that he would be brought before a Disciplinary Hearing Officer who would accept his plea and have him removed from the restrictive housing unit.  *Id.*

No one told Plaintiff that, in addition to being a disciplinary hearing, the hearing was also an SRG affiliation hearing.  *Id.*  Nor did anyone tell Plaintiff that by pleading guilty to the disciplinary charge of SRG affiliation, he waived his right to appeal from the SRG affiliation hearing.  *Id.*  In addition, Plaintiff alleges that the Disciplinary Hearing Officer and Investigator failed to follow Department of Correction ("DOC") Administrative Directive 9.5(23)(G),[5] which Plaintiff contends provides that a disciplinary investigator cannot accept a guilty plea to a first charge of security risk group affiliation.  *Id.*  When Plaintiff appealed his SRG affiliation designation to Defendant Director of Security Antonio Santiago, Director Santiago denied the

---

[4] The Court notes that Plaintiff has alleged no events clearly occurring at Corrigan.
[5] The provision quoted by Plaintiff is now found in Administrative Directive 9.5, section 16(b)(i)(7).  There is no section 23 in the current directive, which became effective on October 1, 2019, and thus was operative at the time of the events in the complaint.  *See* www.portal.ct.gov/DOC/AD/AD-Chapter-9.  Section 16(b)(i)(7) provides that an "Investigator may accept the [guilty] plea and dispose the disciplinary report unless the inmate has been charged with . . . Initial Security Risk Group Affiliation, or any Security Risk Group activity which causes a designation change."

appeal, stating that Plaintiff had received a fair hearing and been afforded appropriate due process. *Id.* at 8–9.

After being designated as an SRG affiliate, Plaintiff was placed in the SRG Program, which he alleges involves "gladiator events." *Id.* at 9. Plaintiff describes the Program as "a placement of prisoners who are aggressive and even deadly into cells with other prisoners who are matched as mortal enemies to fight until one loses. Only then are they separated." *Id.* Plaintiff also alleges that "prisoners who could otherwise defend themselves in a physical altercation are placed in handcuffs behind their backs and placed into 'recreation yards' with other prisoners who have the ability to remove the handcuffs or whom the guards have selected to attack another prisoner and so placed handcuffs on so l[o]osely that such prisoner could easily remove the handcuffs and use them like brass knuckles."[6] *Id.*

On February 28, 2021, Plaintiff sent Defendant Captain Papoosha an inmate request asking that inmates not be handcuffed with their hands behind their backs during recreation. *Id.* at 10. He received no response. *Id.* Plaintiff filed grievance appeals, but never received any response. *Id.*

Plaintiff gave his counselor, Defendant Sanders, inmate request forms for the warden (presumably Defendant Warden Bowles) and Defendant Captain McCreary. Defendant Sanders stated that she put his request to the warden in the box for delivery and handed the request to Captain McCreary personally, but Plaintiff alleges these were false statements as neither defendant responded to his request. *Id.*

Plaintiff submitted another request form complaining about the SRG Program to Captain McCreary on February 24, 2021, but received no answer. *Id.* He alleges McCreary is aware of

---

[6] Plaintiff includes anecdotal information relating to other inmates to support these statements.

the gladiator events and in fact promotes and facilitates attacks on prisoners by other prisoners. *Id.*

While at Northern, Plaintiff submitted an inmate request form to Defendant Commissioner Quiros but received no response. *Id.*

On November 16, 2021, while confined in the Walker building of MacDougall-Walker Correctional Institution, Plaintiff was placed in the recreation yard with his hands cuffed behind his back. *Id.* He was attacked by other inmates, whom he alleges correctional staff knew were his enemies, and suffered a fractured skull and a contusion on his forehead. *Id.* Defendant Dr. Freston determined that Plaintiff should go to an outside hospital for evaluation of his injuries. *Id.* Defendant Lieutenant Laprey, who had escorted Plaintiff to the medical unit, "made a gesture" that indicated his disagreement with Dr. Freston's decision. *Id.* at 11. Plaintiff was eventually taken to the hospital by prison transport van, unaccompanied by any persons with medical training, instead of by ambulance. *Id.* Plaintiff believes that prison officials wanted this form of transport, and Dr. Freston agreed to it, to cover up the incident of inmate-on-inmate violence. *Id.*

At the hospital, Plaintiff was diagnosed with depressed skull fractures and a large hematoma. *Id.* His head was described as normocephalic and atraumatic. *Id.* Plaintiff was positive for headaches, visual disturbances, and wounds. *Id.* Plaintiff has been sent to the hospital five times to address these injuries. *Id.* Plaintiff also alleges that he suffers gaps in his memory that persist to this day. *Id.*

Plaintiff's complaint seeks compensatory and punitive damages from the Defendants in their individual capacities. *Id.* at 12. He also seeks various forms of injunctive relief, including that DOC be ordered to abolish the SRG Program; that DOC be ordered to adopt an inmate request system that requires a receipt for submission of inmate request forms and return of the form after

it is responded to by prison officials; that he receive adequate medical care, a single cell for a medical reason, and prescription transition lenses; that the Court ban the prison practice of transporting prisoners to emergency rooms via prison transport vehicles and by prison employees who do not have medical training; and, finally, that all attacks in the DOC, whether they require medical treatment or not, be reported to the Governor of the State of Connecticut. *Id.* at 12.

## II.    DISCUSSION

As an initial matter, the Court notes that Plaintiff's complaint is not a model of clarity. Although it states that it asserts violations of the First, Eighth, and Fourteenth Amendments, it does not separate the allegations into separate claims, or specify which claims are asserted against which Defendants. In assessing which of Plaintiff's claims should proceed past initial review, the Court has construed Plaintiff's allegations liberally to raise the strongest claims they might suggest, and has assessed the merit of those claims as-construed. *See Sykes*, 723 F.3d at 403.

### A.  Defendant Capacity and Relief Sought

First, the Court examines the capacities in which Defendants are sued and the relief sought against them. Plaintiff sues all Defendants in their individual and official capacities. ECF No. 1 at 2. He seeks compensatory and punitive damages against all Defendants in their individual capacities only, *id.* at 12, which the Eleventh Amendment permits. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). He also seeks a variety of injunctive relief against all Defendants, without specifying in which capacity such relief is sought. ECF No. 1 at 12. Claims for injunctive relief may not be asserted against Defendants in their individual capacities, as they would not have the authority to provide such relief in their individual capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011); *Patterson v. Lichtenstein*, No. 3:18-cv-2130 (MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020). Accordingly, all claims for injunctive relief against

Defendants in their individual capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff may proceed with his injunctive relief requests against Defendants in their *official* capacities.

        B.  <u>First Amendment Claims</u>

Plaintiff contends that Defendants have violated his First Amendment rights to freedom of speech and freedom of association.  ECF No. 1 at 5.

It is not clear what allegations support his First Amendment claim and, as a threshold matter, the Court notes that the mere mention of a constitutional provision is not sufficient to state a claim for relief under that provision.  *See, e.g., Monger v. Connecticut Dep't of Transp.*, No. 3:17CV00205(JCH), 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017) ("Merely mentioning the state constitution, however, is not sufficient to state a claim upon which relief can be based.").

Plaintiff alleges that he was threatened with the "removal of visiting privileges and denial of telephone privileges" in order to induce him to plead guilty to the SRG Affiliation Disciplinary Report, which, as far as the Court can discern, is the only allegation potentially touching on a First Amendment violation.  *See* ECF No. 1 at 8.  However, Plaintiff does not allege that he was *actually* ever denied telephone or visitation privileges, nor that he was ever rendered unable to communicate with family members or friends—this omission is fatal to any First Amendment claim he may have.  *See Marrero v. Weir*, No. 3:13-CV-0028 (RNC), 2014 WL 4799228, at *6 (D. Conn. Sept. 26, 2014) (dismissing claim that "withholding . . . telephone and visitation privileges" in order to induce cooperation with investigation constituted a First Amendment violation, in part because "there [was] no allegation that [plaintiff] was unable to communicate

with family members and friends by other means").[7]

Accordingly, Plaintiff's First Amendment claims for a violation of his First Amendment rights to freedom of speech and freedom of association are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C. Eighth Amendment Claims

The Court construes Plaintiff's complaint as asserting two Eighth Amendment claims, one challenging the conditions of confinement in the SRG Program and the other challenging the medical care provided after his injury on November 16, 2021.

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To state a cognizable Eighth Amendment claim, Plaintiff must allege facts establishing an objective and a subjective element. *Matzell v. Annucci*, 64 F.4th 425, 435 (2d Cir. 2023). "First, a plaintiff must show that the alleged deprivation is objectively 'sufficiently serious' to constitute 'cruel and unusual punishment,' and second, a plaintiff must show that the charged official acted with a 'sufficiently culpable state of mind.'" *Id.* (quoting *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019)).

To satisfy the objective element, "a plaintiff must plead 'a harm of a magnitude that violates a person's eighth amendment rights.'" *Id*. (citation omitted). Conditions that violate the Eighth Amendment "create inhumane prison conditions, deprive inmates of basic necessities or fail to

---

[7] The Court notes that, in his supplemental filings, one of Plaintiff's grievance filings mentions that he was restricted to three phone calls per week and that he could only have short visits with immediate family members while in the SRG program. *See* ECF No. 13 at 4–5. Although a prison inmate's right to communicate with family and friends are First Amendment rights, such rights can be curtailed to serve the legitimate policies and goals of the correctional system. *Marrero*, 2014 WL 4799228, at *6 (citing cases). Because the facts concerning limitations of phone and visitation privileges are not mentioned in his complaint, the Court does not assess them for purposes of this Initial Review Order. As the Court is giving Plaintiff an opportunity to amend his complaint, however, he can choose to include such allegations in any amended complaint.

protect their health or safety." *Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 227 (W.D.N.Y. 2003) (citation and internal quotation marks omitted). To satisfy the subjective element, "a plaintiff must show that the prison officials had 'a state of mind that is the equivalent of criminal recklessness,'. . . ... or that the prison officials acted with deliberate indifference . . . ." *Matzell*, 64 F.4th at 435 (quoting *Francis*, 942 F.3d at 150).

### 1. Conditions in SRG Program

Plaintiff contends that the conditions in the SRG Program constitute cruel and unusual punishment. Plaintiff describes harsh conditions under which prison officials intentionally house inmates with inmates who want to harm them, enter inmates into "gladiator events" with other inmates, and place inmates in the recreation yard in handcuffs, depriving them of the ability to exercise and subjecting them to the possibility of attack, as allegedly happened to Plaintiff on November 16, 2021. ECF No. 1 at 9–10.

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of inmates," which includes "protecting prisoners from violence at the hands of other prisoners." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (cleaned up) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 833 (1994)). In addition, recognizing that "exercise is a basic human need that must be provided for inmates," courts have allowed claims to proceed related to allegations that prison officials forced inmates to wear handcuffs during recreation. *See, e.g.*, *Taylor v. Murphy*, No. 3:10-CV-245 (HBF), 2011 WL 1343883, at *3–*6 (D. Conn. Apr. 7, 2011).

For purposes of initial review, the Court considers Plaintiff's allegations sufficient to state a claim under the Eighth Amendment related to the conditions of confinement in the SRG program.

The next question is against which Defendants such a claim may proceed.  Initially, the Court notes that a plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation omitted).  When assessing the sufficiency of a defendant's alleged "personal involvement," the Court may not apply a "special test for supervisory liability."  *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020).  Thus, a plaintiff must plead that each defendant, "through the official's own individual actions," has violated his rights. *Id.* (quoting *Iqbal*, 556 U.S. at 676).  For an Eighth Amendment deliberate indifference claim against a prison supervisor, "the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it."  *Id.* at 616.  A "supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official."  *See Young v. Choinski*, 15 F. Supp. 3d 172, 189 (D. Conn. 2014).

Here, the Court will allow the Eighth Amendment claim to proceed for monetary damages against Defendants McCreary, Quiros, Deputy Commissioner of Operations John/Jane Doe, and Deputy Commissioner of Administration John/Jane Doe in their individual capacities.  As to these Defendants, Plaintiff alleges something beyond mere awareness of the SRG Program "gladiator events" and failure to respond to grievances.  Specifically, he alleges that Defendant McCreary "promotes and facilitates attacks on prisoners by other prisoners knowingly and deliberately," *see* ECF No. 1 at 10, and that Defendants Quiros and Deputy Commissioners John/Jane Doe "work concertedly to conceal what really happens in this [SRG Program] environment and promote the gladiator events as a 'Program,'" *see id.* at 11.  For purposes of initial review, the Court finds this

sufficient to allege these four Defendants were deliberately indifferent to the serious risk of harm posed to Plaintiff by the SRG Program. *See Tangreti*, 983 F.3d at 616. Defendants remain free to challenge this initial finding in a motion to dismiss.

The Court will not allow this Eighth Amendment claim to proceed for monetary damages against any other Defendant. Plaintiff alleges generally that "[a]ll Defendants," and specifically the Warden and Deputy Wardens at MacDougall, were "aware" of the gladiator events and of what occurred in the SRG Program in the Walker Building.[8] ECF No. 1 at 9, 11. To begin, the warden and deputy wardens at MacDougall are not named as Defendants, so Plaintiff cannot proceed with any claims against them. More generally, the complaint includes no facts to undergird the nonspecific allegations made against "all Defendants." The conclusory allegations of awareness of the gladiator events, standing alone, are insufficient to establish that the Defendants were actually personally involved in any underlying constitutional violation, or that they perpetuated it as supervisors. *See Tangreti*, 983 F.3d at 616; *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (noting that the court is not bound to accept conclusory allegations). Plaintiff also notes that he sent inmate request forms regarding the conditions of confinement in the SRG Program to Defendant Papoosha, Defendant Quiros, and "the Warden" (again, presumably Warden Bowles), *see* ECF No. 1 at 10, but these allegations likewise do not demonstrate personal involvement. *See Young*, 15 F. Supp. at 189.

Although claims for injunctive relief do not require a plaintiff to allege personal involvement, *see Stevenson v. Quiros*, No. 3:20-CV-01518 (VLB), 2020 WL 7188607, at *6 n.5

---

[8] The Court notes that is not clear from the Plaintiff's complaint whether Plaintiff was part of the SRG Program only in the Walker Building at the MacDougall/Walker Correctional Institution, or also at Northern and Corrigan. The Court assumes that it exists across DOC and in all facilities for purposes of this ruling. Defendants remain free to challenge this assumption in a motion to dismiss, should they believe it impacts what relief may be sought from which Defendants.

(D. Conn. Dec. 7, 2020); *Vaughan v. Aldi*, No. 3:19-CV-00107 (JAM), 2019 WL 1922295, at *2 (D. Conn. Apr. 29, 2019), the Court will permit the Eighth Amendment claim to proceed for injunctive relief only against the same four Defendants (Defendants McCreary, Quiros, Deputy Commissioner of Operations John/Jane Doe, and Deputy Commissioner of Administration John/Jane Doe) in their official capacities, as the other Defendants are either not mentioned by name at all, or are only lumped into the conclusory allegations of awareness of the conditions in the SRG Program. *Faber*, 648 F.3d at 104 (noting that the court is not bound to accept conclusory allegations). Although only defendants with the authority to grant the requested relief are proper defendants in a suit for injunctive relief, and it is not yet clear which of these four Defendants, if any, have such authority, the Court may take up this issue at a later stage. *See Stevenson*, 2020 WL 7188607, at *6 n.5 (allowing claim for injunctive relief to proceed past initial review, and postponing decision on the issue of authority).

### 2. Medical Care

In his second Eighth Amendment claim, Plaintiff contends that, after he suffered an assault at the hands of other inmates on November 16, 2021, Dr. Freston was persuaded by Lieutenant Laprey not to send him to the hospital via ambulance for treatment of his skull fracture and other injuries. *See* ECF No. 1 at 11. This appears to have delayed Plaintiff's treatment, as he waited in a prison bullpen for an unspecified amount of time before being taken via prison transport to the hospital. *See id.* at 11. Plaintiff suffered skull fractures, a hematoma, headaches, vision issues, and gaps in his memory as a result of the assault, and was sent back to the hospital five times to address his injuries. *Id.*

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v.*

*Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As with all Eighth Amendment claims, a claim for deliberate indifference to medical needs has both an objective and subjective component.  The objective component requires the plaintiff to demonstrate that he had a sufficiently serious "medical need," in other words, a "'*serious* illness or injury' resulting in the infliction of unnecessary pain and suffering."  *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 105).  For the subjective element, a plaintiff must show that the prison official's actions were more than "an inadvertent failure to provide adequate medical care."  *Id.* at 184 (citing *Estelle*, 429 U.S. at 105–06).  Deliberate indifference can be demonstrated when prison officials "intentionally deny[] or delay[] access to medical care or intentionally interfere with the treatment once prescribed."  *Estelle*, 429 U.S. at 104–05.

For purposes of initial review, Plaintiff's allegations regarding his head injury, which was serious enough to warrant sending him to an outside hospital five times, are sufficient to allege a serious medical need that has caused him "pain and suffering."  *See Smith*, 316 F.3d at 184.

As to the subjective element, Plaintiff's allegations are also sufficient to pass the initial review stage.  Plaintiff's allegations sufficiently raise the issue that Dr. Freston and Lieutenant Laprey may have "intentionally . . . delay[ed] [Plaintiff's] access to medical care" by waiting for Plaintiff to be taken to the hospital by prison transport, rather than by an ambulance, and that this delay was for a non-medical purpose.  *See Estelle*, 429 U.S. at 104–05.  To the extent Dr. Freston was influenced by Lieutenant Laprey in this decision, as Plaintiff alleges, Dr. Freston's decision would not be based on sound medical judgment, as Lieutenant Laprey is not a medical professional.  *See Gibson v. St. Elizabeth Med. Ctr. Hosp. Exec. Dir.*, No. 22-1868, 2023 WL 3295843, at *2 (2d Cir. May 8, 2023) (summary order) ("Whether a course of treatment was the

product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.") (quoting *Chance*, 143 F.3d at 703 (internal quotation marks omitted)); *Quigley v. Williams*, No. 3:21cv1158 (MPS), 2022 WL 16797334, at *2 (D. Conn. Nov. 8, 2022) (noting that court had permitted claim that doctor was influenced by correctional staff and not basing treatment on her medical judgment to proceed on initial review).

Thus, the Court will permit Plaintiff's deliberate indifference to medical needs claim to proceed against Dr. Freston and Lieutenant Laprey for further development of the record.

D.  Fourteenth Amendment Claims

The Court construes Plaintiff's complaint as asserting three Fourteenth Amendment procedural due process claims, one challenging prison grievance procedures, the second challenging various aspects of the SRG classification hearing, and the last challenging the procedures related to the disciplinary hearing.

In order to establish a procedural due process claim under the Fourteenth Amendment, a plaintiff "must show that (1) he possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process." *Ashby v. Quiros*, No. 3:17-CV-916(CSH), 2018 WL 2324081, at *8 (D. Conn. May 22, 2018).

1.  *Grievance Procedures*

Plaintiff alleges that he sent multiple inmate requests and grievances which went unaddressed—including one to Captain Papoosha, one to the Warden, one to Captain McCreary, and one to Commissioner Quiros.  ECF No. 1 at 10.  At least two of the grievances, the one to the Warden and the one to Captain McCreary, Plaintiff attempted to deliver with the help of Counselor Sanders, who he alleges falsely stated that she had delivered the requests through the proper channels.  *Id.*

14

The Supreme Court has never held that the Constitution requires state prisons to have formal grievance procedures.  In *Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018), the Second Circuit rejected a state prisoner's constitutional claim regarding prison grievance procedures.  The court noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right.  However, neither state policies nor state statutes create federally protected due process entitlements to specific state-mandated procedures."  *Id*. at 13 (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks and ellipsis omitted); *see also Schlosser v. Manuel*, No. 3:19-cv-1444 (SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) ("Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance or to have a grievance processed properly.").

As Plaintiff has no constitutional right to have his grievances properly processed, his Fourteenth Amendment due process claim related to inmate request forms and grievance procedures fails as a matter of law and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### 2.  Classification Hearing

Plaintiff also asserts due process claims related to his SRG classification hearing. Specifically, Plaintiff asserts that Disciplinary Investigator Doe and Disciplinary Hearing Officer Doe failed to inform him of the fact that the disciplinary hearing was also a classification hearing and that he would have no right to appeal from that hearing if he pled guilty to the disciplinary infraction,[9] and that Director of Security Santiago denied his appeal of his SRG classification.

---

[9] Although the complaint states that "[n]one of the Defendants notified the Plaintiff" of the two hearings contained within the disciplinary hearing or the potential loss of his right to appeal, the Court construes this statement as referring only to Disciplinary Investigator Doe and Hearing Officer Doe, not to all sixteen Defendants, as these two Defendants appear to be the only ones who were involved with Plaintiff during the hearing process.  *See* ECF No. 1 at 8; *see also Trimmier v. Cook*, No. 3:20CV396(KAD), 2020 WL 5231300, at *8 (D. Conn. Sept. 2, 2020) (where Plaintiff's allegations are not entirely clear, construing due process claim as against only certain defendants).

Plaintiff's due process claim against Disciplinary Hearing Investigatory Doe and Disciplinary Hearing Officer Doe will be allowed to proceed, as Plaintiff has sufficiently alleged a liberty interest and the denial of process related to that interest. The United States Constitution does not create a liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). However, state law may create liberty interests in being free from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 222–23 (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (internal quotation marks omitted). Thus, the Court must consider the nature of the restrictions Plaintiff faced and the severity of those conditions in relation to the ordinary incidents of prison life and not any specific procedural requirement in the prison directives. *Id.* at 223 (citing *Sandin*, 515 U.S. at 484). The Second Circuit has held that the *Sandin* analysis should be applied when considering due process claims relating to administrative classification. *See Arce v. Walker*, 139 F.3d 329, 334–35 (2d Cir. 1998) (applying *Sandin* to claim for placement in non-punitive administrative segregation).

Here, Plaintiff has sufficiently alleged a liberty interest in his classification. Plaintiff alleges that he was confined with inmates who intended to harm him and, ultimately, did harm him. He alleges that correctional officers deliberately matched cellmates who would fight and, possibly, kill one another. For purposes of initial review, the Court considers Plaintiff's allegations sufficient to demonstrate an "atypical and significant hardship;" thereby establishing a liberty interest in his classification. *See Sandin*, 515 U.S. at 484; *see also Velez-Shade v. Population Mgmt.*, No. 3:18CV1784(JCH), 2019 WL 4674767, at *11 (D. Conn. Sept. 25, 2019) (analyzing DOC directives and recognizing liberty interest in SRG classification).

Plaintiff further sufficiently alleges that he was not provided with sufficient process before being classified in the SRG Program, as Plaintiff alleges that he was not told that the hearing also was a classification hearing or given any notice of the classification hearing.  Thus, his due process claim will proceed against Defendants Disciplinary Hearing Officer and Disciplinary Investigator Doe.  *See Velez-Shade*, 2019 WL 4674767, at *12 (holding that prisoner did not have opportunity to defend against change in classification where prisoner did not receive separate classification hearing or notice that disciplinary hearing was also classification hearing); *see also Trimmier*, 2020 WL 5231300, at *8 (allowing procedural due process claim where plaintiff received no notice or hearing before being reclassified as SRG member).

On the other hand, Plaintiff's claim against Director Santiago does not sufficiently state a claim for purposes of initial review.  Plaintiff alleges that Director Santiago denied his appeal, but he cannot even state a liberty interest in having his classification appealed at all.  There is no constitutional right to appeal the decision in a disciplinary hearing, *see Staton v. Gonzalez*, No. 3:22-CV-855 (VLB), 2023 WL 3042187, at *6 (D. Conn. Apr. 21, 2023), and Plaintiff has identified no state-created right to an appeal his classification.  As disciplinary hearings typically afford more due process protections to inmates than classification hearings, and there is no right to appeal a disciplinary hearing, the Court does not find Plaintiff has stated he did not receive sufficient process where he filed an appeal of a classification that was denied.  *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 563–71 (1974) (describing procedures required at disciplinary hearings as advance notice of the charges, opportunity to call witnesses and present documentary evidence, impartial decision maker, and written decision from factfinder detailing evidence relied upon and rationale for disciplinary action taken).  Absent a constitutional right to appeal the classification decision, the Fourteenth Amendment claim against Defendant Santiago is dismissed pursuant to

28 U.S.C. § 1915A(b)(1).

### 3. *Disciplinary Hearing*

Plaintiff alleges that Disciplinary Investigator Doe and Disciplinary Hearing Officer Doe improperly accepted his guilty plea to the disciplinary charge in violation of prison directives. This claim must be dismissed because the Defendants did not violate the directive. Directive 9.5(16)(b) is entitled "Disciplinary Investigator Disposition," and appears to describe situations under which the investigator may accept a guilty plea, impose sanctions, and dispose of the disciplinary report *without holding any disciplinary hearing*. If one of the charges is SRG affiliation, the directive appears to require a disciplinary hearing even when there is a guilty plea. Here, Plaintiff alleges that, after he agreed to plead guilty, the Disciplinary Investigator told him that he would be brought before the Disciplinary Hearing Officer, who would accept his guilty plea—there is no allegation that he did not have a hearing. Thus, it does not appear that Disciplinary Investigator Doe and Disciplinary Hearing Officer Doe disposed of the disciplinary report without a hearing and, thus, did not violate the directive in accepting Plaintiff's guilty plea.

Plaintiff also alleges that Defendant Disciplinary Investigator Doe ordered restrictive housing staff to prevent Plaintiff from resting to pressure him to plead guilty to the disciplinary charge. The court must consider separately claims relating to disciplinary and classification hearings, even when the two hearings are combined. *See Mendez v. Lis*, No. 3:18-cv-1460 (MPS), 2019 WL 1644235, at *5 (D. Conn. Apr. 16, 2019) (considering separately results of classification and disciplinary decisions even where the two hearings are combined). Plaintiff does not allege that he incurred any sanctions as a result of pleading guilty to the disciplinary charge itself. Absent any sanctions, Plaintiff did not suffer an atypical and significant hardship as a result of his guilty plea, as the fact that pleading guilty also affected his classification is a separate issue. *See id.* ("In

short, the SRG Program and resulting deprivations were the result of the classification decision as opposed to the disciplinary finding, and the plaintiff does not allege any facts setting out a sanction resulting from the disciplinary finding."). Thus, Plaintiff does not have a due process claim against Defendant Disciplinary Investigator Doe based on his guilty plea to the disciplinary charge, and this Fourteenth Amendment claim against Disciplinary Investigator Doe is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Should Plaintiff seek to challenge any sanction imposed as a result of the disciplinary finding of guilt, he may raise that issue in an amended complaint.

E. <u>Remaining Defendants</u>

Finally, Plaintiff includes Lieutenant Roy, Warden Bowles, Deputy Warden of Operations at Northern John/Jane Doe, Deputy Warden of Administration at Northern John/Jane Doe, and Captain Danneck as defendants but includes no specific allegations against them. A conclusory allegation, that all defendants "knew" Plaintiff's rights were being violated, *see* ECF No. 1 at 8, 9, is insufficient to state a plausible claim. *See Faber*, 648 F.3d at 104 (court not bound to accept conclusory allegations). As Plaintiff alleges no facts showing that these five defendants violated his constitutional rights, all claims against them are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**ORDERS**

All First Amendment claims, and all claims against Defendants Lieutenant Roy, Warden Bowles, Deputy Warden of Operations at Northern John/Jane Doe, Deputy Warden of Administration at Northern John/Jane Doe, Counselor Sanders, Captain Danneck, Captain Papoosha, and Director of Security Santiago are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The case can proceed on (1) the Eighth Amendment conditions of confinement claim against Defendants Commissioner Quiros, Deputy Commissioner of Operations John/Jane Doe,

Deputy Commissioner of Administration John/Jane Doe, and Captain McCreary; (2) the Eighth Amendment claim for deliberate indifference to medical needs against Defendants Dr. Freston and Lieutenant Laprey; and (3) the Fourteenth Amendment due process claim against Defendants Initial SRG Disciplinary Hearing Officer John Doe and Initial SRG Disciplinary Investigator John Doe related to the failure to inform Plaintiff of the classification hearing embedded in his disciplinary hearing.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

**<u>OPTION ONE</u>**

If Plaintiff wishes to proceed immediately on the claims against Defendants Commissioner Quiros, Deputy Commissioner of Operations John/Jane Doe, Deputy Commissioner of Administration John/Jane Doe, Captain McCreary, Dr. Freston, Lieutenant Laprey, Hearing Officer Doe and Disciplinary Investigator Doe, and only as set forth above, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket by **January 12, 2024,** informing the Court that he elects to proceed with service as to the claims against these Defendants. The Court will then begin the effort to serve process these Defendants. The Court notes, however, that service cannot be effected on Defendants Deputy Commissioner of Operations John/Jane Doe, Deputy Commissioner of Administration John/Jane Doe, Hearing Officer Doe, or Disciplinary Investigator Doe without those Defendants' full names and current addresses. Accordingly, if Plaintiff chooses the option of proceeding with this suit as described in this paragraph, he will need to serve discovery requests on the other Defendants in order to identify the full names and mailing addresses of the Doe Defendants. If Plaintiff chooses to proceed with this suit as described in this paragraph, he will have ninety (90) days from the date of appearance of any other Defendants to provide the full names and mailing addresses to the Court by filing a

notice with that information.

### **OPTION TWO**

Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed in order to attempt to state a viable claim, he may file an Amended Complaint by **January 12, 2024.**  An Amended Complaint, if filed, will completely replace the Complaint and the court will not consider any allegations made in the Complaint in evaluating any Amended Complaint.  The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an Amended Complaint, the Complaint this Initial Review Order addressed will <u>not</u> proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **January 12, 2024**, the Court will presume that Plaintiff wishes to proceed with Option One, on the Complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Change of Address**. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEAS NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

SO ORDERED at Hartford, Connecticut, this 13th day of December 2023.

/s/ Sarala v. Nagala
Sarala V. Nagala
United States District Judge