# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER CALHOUN, | ) | 3:23-CV-00715 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANGEL QUIROS, ET AL., | ) | |
| *Defendants*. | ) | June 5, 2024 |

## INITIAL REVIEW ORDER RE AMENDED COMPLAINT

*Pro se* plaintiff Christopher Calhoun a sentenced[1] inmate currently incarcerated at Cheshire Correctional Center ("Cheshire"), filed this action pursuant to 42 U.S.C. § 1983. Following the Court's December 13, 2023, Initial Review Order, which allowed only some of Plaintiff's claims to proceed, Plaintiff filed the present amended complaint. In the amended complaint, Plaintiff asserts claims for violation of his rights under the Eighth and Fourteenth Amendment. He seeks damages and injunctive relief from Defendants in their individual and official capacities. In evaluating the amended complaint, the Court will determine whether claims should proceed against any of the twenty-six defendants listed on page 3 of the amended complaint, despite that only Commissioner Angel Quiros is listed in the case caption.[2]

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on July 29, 2020, to a term of imprisonment of forty-five years. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=390878 (last visited June 5, 2024). The Court may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

[2] The amended complaint also includes allegations against medical staff at UConn Health Center, who are not included as defendants in this action. As Plaintiff has filed a separate action against the UConn medical providers, *see Calhoun v. UConn Health et al.*, Case No: 3:23-cv-01453 (SVN), the Court does not reference those allegations or claims in this order.

entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.[3]  Based on this initial review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

While the Court does not set forth all of the facts alleged in Plaintiff's amended complaint, ECF No. 23, it summarizes his basic factual allegations here to give context to its ruling below.

The incidents underlying this action occurred while Plaintiff was confined at Walker Correctional Institution ("Walker CI"), Northern Correctional Institution ("Northern CI"), and Corrigan Correctional Center ("Corrigan CI").  Plaintiff is currently housed at Cheshire Correctional Institution ("Cheshire CI").

On September 2, 2020, Plaintiff was issued a disciplinary report for security risk group ("SRG") affiliation and removed from general population to restrictive housing.  This was Plaintiff's first such report.  Am. Compl., Statement of Claim ¶ 1.  The disciplinary investigator told Plaintiff that he could receive harsh sanctions if he did not plead guilty.  *Id.* ¶ 2.

---

[3] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Plaintiff did not want to plead guilty but alleges that the disciplinary investigator told the restrictive housing staff not to permit him to rest or sleep.  *Id.* ¶ 3.  In addition, the restrictive housing unit was very noisy which also prevented Plaintiff from sleeping.  *Id.*  After two days, Plaintiff told Investigator Behm that he would plead guilty.  Investigator Behm told Plaintiff that he would be brought before Disciplinary Hearing Officer Stanley, who would accept his plea and have him removed from the restrictive housing unit.  *Id.*

No one told Plaintiff that, in addition to being a disciplinary hearing, the hearing was also an SRG affiliation hearing.  *Id.* ¶¶ 4–6.  Nor did anyone tell Plaintiff that by pleading guilty to the disciplinary charge of SRG affiliation, he waived his right to appeal from the SRG affiliation hearing.  *Id.* ¶ 6.  In addition, Disciplinary Hearing Officer Stanley and Investigator Behm failed to follow the prison directive which provides that a disciplinary investigator cannot accept a guilty plea to a first charge of SRG affiliation.  *Id.* ¶¶ 7–8.  When Plaintiff did file an appeal, Director Santiago denied the appeal on behalf of himself and SRG Coordinator Captain Papoosha, stating that Plaintiff had received a fair hearing and been afforded appropriate due process.  *Id.* ¶ 9.

Plaintiff was placed in the SRG Program, which included "gladiator events."  *Id.* ¶ 11. Plaintiff describes the Program as "a placement of prisoners who become aggressive and even deadly because they are oppressed and or forced into cells with enemies of themselves or their Gang Affiliation to fight until one [loses....]"[4]  *Id.*

On February 28, 2021, Plaintiff sent Captain Papoosha an inmate request asking that inmates not be handcuffed with their hands behind their backs during recreation.  He received no response.  *Id.* ¶ 12.  Plaintiff believes that Captain Papoosha did not respond because he knew of the many assaults in the recreation yard and he and other officers made wagers on the inmates

---

[4] Plaintiff includes anecdotal information relating to other inmates to support this statement.

selected to fight in the recreation cages.  *Id.*

Plaintiff also alleges that "prisoners who could otherwise defend themselves in a physical altercation are placed into a 'Recreation' yard with their hands cuffed behind their backs, with other prisoners who have the ability to slip the cuffs off of their wrists or whom Guards have selected to assault another prisoner and place[d] handcuffs loosely on the prisoner[']s wrist and use them like brass knuckles." *Id.* ¶ 13.

Plaintiff submitted grievances related to these issues, which were not acknowledged.  *Id.* ¶ 14.  When Plaintiff questioned Counselor Sanders about this, she stated that she put his request to the warden in the box for delivery and handed his other request to Captain McCreary—but Plaintiff believes this was false, given that he received no responses.  *Id.*  Counselor Sanders also refused to sign or date his grievance form.  *Id.*  While at Northern CI, Plaintiff submitted a request to Commissioner Quiros seeking a change in the policies governing the SRG Program but again received no response.  *Id.* ¶ 16.

On October 30, 2021, while at Corrigan CI, Plaintiff was assaulted from behind while trying to use the phone.  *Id.* ¶ 17.  He was "sucker punched in the back of his head without provocation."  *Id.*  Intelligence Officer Lieutenant Occasio stated that the assault was the result of a "hit" having been placed on Plaintiff.  *Id.*

While Plaintiff was in restrictive housing challenging the fighting ticket he received as a result of the October 30, 2021, incident, he received an SRG ticket for violating telecommunication rules.  *Id.* ¶ 18.  Plaintiff was transferred to Walker CI and placed in phase one of the SRG Program, which required that he be handcuffed during recreation.  *Id.*  Intelligence and disciplinary officers told Plaintiff that Captain Papoosha was responsible for his transfer to Walker because he was angry that Plaintiff had sent the request to the commissioner to change the SRG Program

guidelines.  *Id.* ¶ 19.

An inmate was issued a disciplinary report for ordering the "hit" on Plaintiff and that inmate was placed in restrictive housing but in a different unit.  *Id.* ¶ 20.  Soon thereafter, an inmate who belonged to the same "set" was transferred out of Plaintiff's restrictive housing unit and into the same unit as the one who ordered the hit.  *Id.*  Plaintiff believes that this action shows that correctional staff all the way up the chain of command, from Lieutenant Occasio to the Captain of the SRG Unit at Corrigan CI, to the deputy wardens and Warden Martin, knew that Plaintiff was in danger of being assaulted by other members of the "set."  *Id.*

On November 16, 2021, Plaintiff was transferred to Walker CI and was told he would be in the same recreation yard as members of the gang that had assaulted him at Corrigan CI.  *Id.* ¶ 21.  Plaintiff alleges that Intelligence Officer Behm, lieutenants in the Walker SRG Program, Captain Danneck, Captain Roy, and Counselor Supervisor Stanley knew that Plaintiff would be assaulted because the "hit" on him was in his record.  *Id.*  Plaintiff further alleges that these officers shared the information with the deputy wardens at Walker CI and Warden Barone.[5]  *Id.*

When Plaintiff entered the SRG unit, correctional staff heard inmates yelling that Plaintiff would be assaulted.  *Id.* ¶ 22.  When Plaintiff entered his cell and was about to take his mattress from the officer, another officer said he did not need a mattress and threw the mattress over the railing.  *Id.*  At recreation time, Plaintiff was told he could use the phone or go outside.  *Id.*  Plaintiff chose to use the phone.  *Id.*  When he finished, Officer Doe applied Plaintiff's handcuffs tightly to ensure that he could not slip the handcuffs to the front.  *Id.*

Plaintiff was then put in the recreation yard with inmates whose cuffs were loose, thanks to correctional officers.  *Id.* ¶ 23.  Plaintiff was punched in the back of his head causing him to fall

---

[5] Plaintiff lists this defendant as "Warden Kristine Baran" on page 3 of the Amended Complaint, but uses the spelling "Barone" in the allegations.  The Court accordingly uses the "Barone" spelling.

forward, hit his head on the asphalt, and lose consciousness. *Id.* The inmates continued to kick Plaintiff and punch him in the face using their handcuffs on their fists like brass knuckles. *Id.* Plaintiff suffered a fractured skull, contusions, and damage to his left eye. *Id.*

Plaintiff was dragged to the medical unit; he was not transported on a stretcher. *Id.* ¶ 24. Lieutenant Laprey supervised the move. *Id.* In the medical unit, Nurse Dave determined that Plaintiff was unconscious. *Id.*

Plaintiff was dragged from the medical unit to another area while still unconscious. *Id.* ¶ 25. His clothes were changed to a prison jumpsuit and he was left unattended in a holding cell. *Id.* Dr. Freston determined that Plaintiff's injuries were too serious to treat at the facility, but he did not call an ambulance to transport Plaintiff to the hospital. *Id.* ¶ 25. Instead, Plaintiff was taken to the hospital in a Department of Correction transport van, thereby delaying medical attention. *Id.* Plaintiff was taken to UConn Health Center, not the closest emergency room. *Id.* Plaintiff was interviewed by a state trooper in the hospital but declined to press charges. *Id.* ¶ 26.

When Plaintiff returned to Walker CI from the hospital, he was told he would be returned to the SRG unit. *Id.* ¶ 28. Although the medical unit initially cleared Plaintiff to return to the housing unit, Lieutenants Wooten and Massif countermanded the order and said that Plaintiff could not return to the housing unit in his current condition. *Id.* Plaintiff remained in the medical unit for more than thirty days, with several trips back to the hospital. *Id.* ¶ 29.

Prison medical staff ordered an x-ray of Plaintiff's skull on November 29, 2021, which showed that Plaintiff had a depressed skull fracture. *Id.* ¶ 30.

## II.   DISCUSSION

On initial review of the original complaint, the Court determined that Plaintiff stated the following plausible claims: (1) an Eighth Amendment conditions of confinement claim against

Defendants Commissioner Quiros, Deputy Commissioner of Operations Doe, Deputy Commissioner of Administration Doe, and Captain McCreary; (2) an Eighth Amendment claim for deliberate indifference to medical needs against Dr. Freston and Lieutenant Laprey; and (3) a Fourteenth Amendment due process claim against Defendants Initial SRG Disciplinary Hearing Officer Doe and Initial SRG Disciplinary Investigator Doe regarding the failure to inform Plaintiff that his hearing was a disciplinary hearing and a classification hearing. *See* ECF No. 15 at 19–20. Plaintiff seeks to supplement these claims with additional defendants and restore other claims that were dismissed on initial review.

Plaintiff now asserts the following claims: (1) Defendants Papoosha, Deputy Wardens at Corrigan, Warden Martin, DR Officer Doe, Lieutenant Occasio, and SRG Captain John or Jane Doe at Corrigan were deliberately indifferent to Plaintiff's safety because they knew of the hit on Plaintiff and that he would be assaulted if placed in a recreation yard; (2) Captain Danneck, Captain Roy, Lieutenants John or Jane Doe of the Walker SRG Program, and Officer Behm, could have prevented the incident at Walker by not placing Plaintiff in the recreation yard; (3) the entire security division, all wardens, deputy wardens, and the commissioner were aware of other assaults that occurred prior to the assault on Plaintiff but failed to make changes to the SRG Program; (4) Captain Stanley, Officer Behm, Gang Intelligence Coordinator Captain Papoosha, and Director of Security Santiago violated Plaintiff's Fourteenth Amendment right to due process by accepting his guilty plea; (5) Commissioner Quiros, Deputy Commissioner Carlos, Deputy Commissioner Mulligan, Director of Security Santiago, Gang Intelligence Coordinator Captain Papoosha, Warden Martin, the deputy wardens at Corrigan CI, Lieutenant Occasio, the disciplinary investigator at Corrigan CI, Correctional Counselor John Doe, Warden Barone, the deputy wardens at Walker CI, Captain Danneck, Captain Roy, Captain Stanley, and Officer Behm were

deliberately indifferent to Plaintiff's safety in violation of the Eighth Amendment by failing to prevent the assault against him on November 16, 2021; and (6) Lieutenant Laprey, Correctional Officers Doe, and Dr. Freston were deliberately indifferent to Plaintiff's safety by dragging him through the facility, leaving him unattended in a holding cell, and transporting him to the hospital in a van rather than an ambulance.

      A.    <u>Defendant Capacity and Relief Sought</u>

      Plaintiff seeks damages from all defendants in their individual and official capacities. *Id.* at 27. Claims for damages against state officials in their official capacities, however, are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1995). All requests for damages from the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

      Plaintiff also seeks eight forms of injunctive relief: (1) abolishment of the SRG Program; (2) modifications to the inmate request system; (3) modifications to the inmate grievance system; (4) medical care including "healthy foods to order—vegetables, fruits, proteins, nuts, vitamins; (5) indefinite single cell occupancy; (6) prescription glasses with transition lenses; (7) prohibition against transporting prisoners to emergency rooms in transport vans, and (8) additional phone calls and emails. Am. Compl. at 27–28. Claims for injunctive relief may not be asserted against Defendants in their individual capacities, as they would not have the authority to provide such relief in their individual capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011); *Patterson v. Lichtenstein*, No. 3:18-cv-2130 (MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020). Accordingly, all claims for injunctive relief against Defendants in their individual capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). For purposes of initial review, Plaintiff may proceed with his injunctive relief requests against Defendants in their official

capacities, although the Court notes that injunctive relief will not ultimately be granted "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *See* 18 U.S.C. § 3626(a)(1). Plaintiff may pursue his injunctive relief claims against only the defendants who are allowed to proceed past initial review in their official capacities; at a later time, the Court may take up the issue of whether such relief is appropriate; which of these defendants has the authority to grant the requested injunctive relief, if any; and whether injunctive relief has been rendered moot by Plaintiff's transfer to Cheshire CI. *See Stevenson v. Quiros*, No. 3:20-cv-01518 (VLB), 2020 WL 7188607, at *6 n.5 (D. Conn. Dec. 7, 2020) (allowing claim for injunctive relief to proceed past initial review, and postponing decision on the issue of authority); *Tripathy v. McKoy*, __ F.4th __, 2024 WL 2742344, at *3 (2d Cir. May 29, 2024) (recognizing that transfer from a prison facility generally moots claims for injunctive relief against officials of that facility).

### B.    Fourteenth Amendment

Plaintiff brings only one Fourteenth Amendment due process claim in the amended complaint. He contends that Captain Stanley, Officer Behm, Captain Papoosha, and Director Santiago violated his Fourteenth Amendment right to due process. These Defendants were involved in the disciplinary/classification hearing. Plaintiff asserted this claim in his original complaint against Disciplinary Hearing Officer Doe (now identified as Captain Stanley), Disciplinary Investigator Doe (now identified as Officer Behm), and Director Santiago.

On initial review of the complaint, the Court permitted the claim to proceed against the hearing officer and investigator. For the same reasons, this claim will proceed against Defendants Stanley and Behm. *See* ECF No. 15 at 16–17.

Previously, Plaintiff alleged only that he appealed to Director Santiago who denied the appeal. The Court dismissed the claim against Director Santiago because Plaintiff has no constitutional right to appeal a disciplinary or classification decision. *See id*. at 17. Plaintiff now alleges that Director Santiago denied the appeal on behalf of himself and Captain Papoosha. This denial of the appeal does not alter the Court's original determination that Plaintiff cannot state a Fourteenth Amendment claim against Director Santiago and Captain Papoosha. Therefore, the Fourteenth Amendment due process claim against Defendants Santiago and Papoosha is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).[6]

 C. <u>Eighth Amendment</u>

Plaintiff's remaining claims are for Eighth Amendment violations, including deliberate indifference to safety, unconstitutional conditions of confinement, and deliberate indifference to medical needs.

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To state a cognizable Eighth Amendment claim, Plaintiff must allege facts establishing an objective and a subjective element. *Matzell v. Annucci*, 64 F.4th 425, 435 (2d Cir. 2023). "First, a plaintiff must show that the alleged deprivation is objectively 'sufficiently serious' to constitute 'cruel and unusual punishment,' and second, a plaintiff must show that the charged official acted with a 'sufficiently culpable state of mind.'" *Id.* (quoting *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019)).

---

[6] Although Plaintiff states that Counselor Sanders "is a defendant in this action" due to her alleged false statements related to Plaintiff's grievance forms, *see* Am. Compl. Statement of Claim ¶ 14, Counselor Sanders is not listed as a defendant in the amended complaint, *see id.* at 3. Regardless, even construing the amended complaint liberally as asserting a Fourteenth Amendment claim against Counselor Sanders, such a claim would be dismissed for the same reasons described in the Initial Review Order regarding inmates having no constitutional entitlement to grievance procedures. *See* ECF No. 15 at 14–15.

To satisfy the objective element, "a plaintiff must plead 'a harm of a magnitude that violates a person's eighth amendment rights.'" *Id.* (citation omitted).  Conditions that violate the Eighth Amendment "create inhumane prison conditions, deprive inmates of basic necessities or fail to protect their health or safety." *Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 227 (W.D.N.Y. 2003) (citation omitted).  To satisfy the subjective element, "a plaintiff must show that the prison officials had 'a state of mind that is the equivalent of criminal recklessness,' ... or that the prison officials acted with deliberate indifference...." *Matzell,* 64 F.4th at 435 (quoting *Francis*, 942 F.3d at 150).

### 1. Deliberate Indifference to Safety at Corrigan CI

Plaintiff's first claim involves Defendants alleged to work at Corrigan CI.  Plaintiff contends that Defendants Papoosha, the Administrative Deputy Warden and Operations Deputy Warden, Warden Martin, Lieutenant Occasio, Disciplinary Officer Doe, and SRG Captain John or Jane Doe knew about the hit on him and the risk he would be assaulted.  *See* Am. Compl. Statement of Claim ¶ 34.[7]  Plaintiff ultimately was assaulted at Corrigan CI on October 30, 2021, near the unit telephones.

To state an Eighth Amendment claim for deliberate indifference to safety, Plaintiff must show that he was confined under conditions that posed a substantial risk of serious harm and that the defendants both knew that he faced a substantial risk of serious harm and failed to take reasonable actions to abate or avert the harm.  *See Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (summary order) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).  There is no "bright line test" to determine whether a risk of serious harm is "substantial"

---

[7] The Court notes that Plaintiff did not include any Doe Defendants in the list of persons he intended to name as Defendants in the amended complaint, although he has included unspecific allegations against DR Officer John Doe and Captain John Doe/Jane Doe of the S.R.G. Program at Corrigan CI.  *See* ECF No. 23 at 3, *id.*, Statement of Claim ¶ 34.  The allegations against DR Officer John Doe and Captain John Doe/Jane Doe fail for the same reasons discussed in this section.

for Eighth Amendment purposes. *See Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The defendant's actions must be more than merely negligent. *See Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012).

Defendants Warden Martin, the deputy wardens, and Lieutenant Occasio are all identified as working at Corrigan CI. Plaintiff alleges that after the assault, Lieutenant Occasio told Plaintiff that the assault was the result of a hit on him. He further alleges that, while he was housed in the restricted housing unit following the assault, another inmate was moved from that unit because that inmate was from the same "set" as the inmate who ordered the hit on Plaintiff. Plaintiff alleges no facts, however, suggesting that any Defendant was aware of any particular risk to Plaintiff until after this first assault.[8] His allegations that they knew of the risk before the assault occurred are conclusory. Following the assault, Plaintiff was transferred to Walker CI, and the Corrigan CI officials had no control over his placement or movements at Walker CI.

While assault by other inmates is not a risk that society chooses to tolerate, Plaintiff fails to allege facts showing that Defendants Warden Martin, the deputy wardens, and Lieutenant Occasio were aware of a substantial risk of serious harm at any time before the first assault and failed to take actions to avert it. Thus, Plaintiff fails to state a plausible claim regarding the assault at Corrigan. This first claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

---

[8] Plaintiff submitted exhibits to the amended complaint which, based on Plaintiff's handwritten notes, purport to demonstrate that certain Defendants had knowledge of the threat to Plaintiff before the November 2021 assault at Walker CI, *see* ECF No. 25 at 4, 7, but none of these documents predates the October 30, 2021, assault at Corrigan CI.

12

2.   *Deliberate Indifference to Safety at Walker CI*

Plaintiff asserts two claims relating to Walker CI.  First, he contends that Captain Danneck, Captain Roy, Officer Behm, and Lieutenants Doe could have prevented the assault on November 16, 2021, by not placing him in a recreation yard at Walker CI.   Second, Plaintiff argues that Commissioner Quiros, Deputy Commissioner Carlos, Deputy Commissioner Mulligan, Director Santiago, Captain Papoosha, Warden Martin, the deputy wardens at Corrigan, Lieutenant Occasio, the disciplinary investigator at Corrigan, Correctional Counselor John Doe, Warden Barone, the deputy wardens at Walker, Captain Danneck, Captain Roy, Captain Stanley, and Officer Behm all failed to prevent the second assault.  These claims are, essentially, restatements of the same claim, that the named Defendants were deliberately indifferent to his safety at Walker CI.

Correctional Counselor John Doe and Lieutenants Doe are not included in the list of intended defendants.  Thus, any claims against them are dismissed.  Lieutenant Occasio and the Corrigan deputy wardens were not assigned to Walker CI and had no authority over Plaintiff's placement there.  The claims against these three defendants are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Commissioner Quiros, Deputy Commissioner Carlos, Deputy Commissioner Mulligan, Director Santiago, Warden Barone, Warden Martin, and the deputy wardens at Walker are supervisory officials.  In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit clarified the standard to be applied to claims against supervisory officials.  The Second Circuit adopted the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that "after *Iqbal,* there is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti,* 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).  Thus,

Plaintiff must show that each of these supervisory defendants was personally aware of the risk to Plaintiff's safety before the assault occurred.

Plaintiff merely assumes their knowledge because "information is passed up the chain of command," Am. Compl. Statement of Claim ¶ 20, or shared with supervisors, *id.* ¶ 21, and all wardens have to sign off on the transfer of an inmate, *id.* ¶ 35. These assumptions are insufficient to support a plausible claim. *See Iqbal*, 556 U.S. at 678–79 (pleadings that are no more than conclusions are not entitled to the presumption of truth). Furthermore, even if these supervisory defendants were aware of the hit on Plaintiff or his transfer to Walker CI, "[a] supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not 'amount[] to the supervisor's violating the Constitution.'" *Tangreti*, 983 F.3d at 616–17 (quoting *Iqbal*, 556 U.S. at 677).

The claim against supervisory defendants Quiros, Carlos, Mulligan, Santiago, Barone, Martin, and the deputy wardens at Walker CI for failure to protect Plaintiff from the assault at Walker CI is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The remaining defendants in these claims—Captain Papoosha, Captain Danneck, Captain Roy, Captain Stanley, and Officer Behm—appear to have been more directly involved in Plaintiff's movements and confinement at Walker CI, such that they would have been aware of the risk to Plaintiff and the reason for his transfer from Corrigan CI, and could plausibly have acted to protect him. In addition, Plaintiff names as Defendants Officers McDonald, Mann, Young, Parker, and Girardin, whom the Court infers were the officers who applied handcuffs to the inmates before they entered the Walker CI recreation yard. *See* Am. Compl. Statement of Claim ¶ 23 (acknowledging that Plaintiff does not know "which officer did what"). The Court will permit the deliberate indifference to safety claim regarding the incident at Walker to proceed against

Defendants Papoosha, Danneck, Roy, Stanley, Behm, McDonald, Mann, Young, Parker, and Girardin for further development of the record.

### 3.   *Unconstitutional Conditions of Confinement*

Plaintiff generally contends that the entire security division, all wardens, deputy wardens, and the commissioner subjected him to unconstitutional conditions of confinement because they were aware of other assaults that occurred prior to the assault on Plaintiff but failed to make changes to the SRG Program.

This appears to be the same challenge to the conditions of confinement in the SRG Program asserted in the complaint.  On initial review, the Court permitted this claim to proceed against Captain McCreary, Commissioner Quiros, and the Deputy Commissioners Doe, because Plaintiff had alleged "something beyond mere awareness of the SRG Program 'gladiator events' and failure to respond to grievances."  ECF No. 15 at 10.  Specifically, he had alleged that these individuals promoted the gladiator events.  *Id.*  The amended complaint does not contain these types of allegations.

In the instructions permitting Plaintiff to amend his complaint, Plaintiff was advised that the Court would review only the allegations in the amended complaint to determine whether any claims should proceed to service.  *Id.* at 21.  In the amended complaint, Plaintiff alleges only that the supervisory officials, and "all defendants" generally, knew that assaults had occurred in the SRG program, that they "deliberately cover up the assaults that happen," and that Commissioner Quiros failed to respond to his grievance.  *See* Am. Compl. Statement of Claim ¶¶ 13, 16, 36, 38. The Court has previously determined that these conclusory allegations are insufficient to state a plausible claim for relief.  *See* ECF No. 15 at 11; *Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98,

104 (2d Cir. 2011) (court not bound to accept conclusory allegations).  Accordingly, the conditions of confinement claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### 4.   Deliberate Indifference to Medical Needs

Plaintiff alleges that Lieutenant Laprey directed that he be dragged to and from the medical unit instead of transported on a stretcher.  He further alleges that Dr. Freston ordered that he be transported to UConn Health Center by facility transport van instead of by ambulance to the nearest emergency room to "hide the Assault" and minimize Plaintiff's injuries, resulting in delayed medical attention.  Am. Compl. Statement of Claim ¶ 24.

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As with all Eighth Amendment claims, a claim for deliberate indifference to medical needs has both an objective and subjective component.  The objective component requires the plaintiff to demonstrate that he had a sufficiently serious "medical need," in other words, a "'*serious* illness or injury' resulting in the infliction of unnecessary pain and suffering."  *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 105).  For the subjective element, a plaintiff must show that the prison official's actions were more than "an inadvertent failure to provide adequate medical care."  *Id.* at 184 (citing *Estelle*, 429 U.S. at 105–06).  Deliberate indifference can be demonstrated when prison officials "intentionally deny[] or delay[] access to medical care or intentionally interfere[e] with the treatment once prescribed."  *Estelle*, 429 U.S. at 104–05.

Plaintiff's allegation that he suffered a fractured skull which necessitated multiple trips to the hospital is sufficient to meet the objective component on initial review.  Plaintiff further alleges

that Lieutenant Laprey had him dragged to the medical unit and Dr. Freston ordered him transported by facility van to conceal the seriousness of Plaintiff's injuries.  As the Court noted on review of the complaint, these allegations plausibly allege that Dr. Freston may have "intentionally ... delay[ed] [Plaintiff's] access to medical care" and that this delay may have been for a non-medical purpose.  ECF No. 15 at 13–14.  *See Gibson v. St. Elizabeth Med. Ctr. Hosp. Exec. Dir.*, No. 22-1868, 2023 WL 3295843, at *2 (2d Cir. May 8, 2023) (summary order) (whether treatment decision is based on sound medical judgment, negligence, or deliberate indifference, depends on the underlying facts) (quoting *Chance*, 143 F.3d at 703).  In addition, dragging an inmate with serious head injuries through the facility plausibly demonstrates deliberate indifference to Plaintiff's medical needs by Lieutenant Laprey.  The Eighth Amendment claim for deliberate indifference to medical needs will proceed against Dr. Freston and Lieutenant Laprey for further development of the record.  Correctional Officer Does are not included in the list of intended defendants.  Thus, any claims against them are dismissed.

## ORDERS

The following claims are dismissed:  the Eighth Amendment deliberate indifference to safety claims against correctional officials at Corrigan CI; the Eighth Amendment deliberate indifference to safety claims regarding the incident at Walker CI against correctional officials from Corrigan CI and Defendants Quiros, Carlos, Mulligan, Santiago, Barone, and the deputy wardens at Walker CI; the Eighth Amendment claim challenging conditions of confinement in the SRG Program; any claim against Warden Bowles and Captain McCreary at Northern CI[9]; and all requests for damages from Defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

---

[9] None of Plaintiff's allegations appear to relate to events at Northern CI, and Plaintiff does not include specific allegations regarding these two Defendants.

The case will proceed on the Fourteenth Amendment claim for denial of due process against Defendants Stanley and Behm in their individual capacities; the Eighth Amendment claim for deliberate indifference to safety regarding the incident at Walker against Defendants Papoosha, Danneck, Roy, Stanley, Behm, McDonald, Mann, Young, Parker, and Girardin in their individual capacities; and the Eighth Amendment claim for deliberate indifference to medical needs against Defendants Freston and Laprey in their individual capacities.  Plaintiff may also pursue his claims for injunctive relief against these Defendants in their official capacities.

The Clerk is directed to restore Defendants Papoosha, Danneck, Roy, Freston, and Laprey as Defendants in their individual and official capacities.  The Clerk is also directed to add to the case caption Defendants Stanley, Behm, McDonald, Mann, Young, Parker, and Girardin, as Defendants in their individual and official capacities.

Plaintiff's pending motion for emergency review, ECF No. 26, which appears to have sought emergency review of Plaintiff's amended complaint, is **denied as moot** given that the Court has now conducted its initial review.  To the extent Plaintiff's motion, and subsequent letter at ECF No. 27, sought another form of emergency relief, this denial is without prejudice to the resubmission of a motion which specifies the relief sought.  However, because Plaintiff has not demonstrated that good cause exists to seal the filings in this case, which are presumed to be public, Plaintiff's request that his filings be made private, *see* ECF No. 27, is **denied**, without prejudice to the filing of a proper motion to seal pursuant to Local Rule 5(e).

The Court enters the following additional orders.

(1)     The Clerk shall contact the Department of Correction Office of Legal Affairs to ascertain the current work addresses for Stanley, Behm, Papoosha, Danneck, Roy, McDonald, Mann, Young, Parker, Girardin, Freston, and Laprey, mail a waiver of service of process request

packet containing the Amended Complaint, the Initial Review Order, and this Order to each defendant at the address provided by **June 19, 2024**, and report to the Court on the status of the waiver requests on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     The Clerk shall make arrangements for in-person official capacity service by the U.S. Marshal Service of Defendants Stanley, Behm, Papoosha, Danneck, Roy, McDonald, Mann, Young, Parker, Girardin, Freston, and Laprey.

(3)     The Clerk shall send Plaintiff a copy of this Order.

(4)     In lieu of filing an answer or other response to the Amended Complaint by the deadline that would otherwise apply, Defendants may file a notice of *pro se* appearance or notice of appearance of counsel by such deadline.  The Court will issue a schedule for the case once Defendants appear.

(5)     If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should include all the case numbers in the notice of change of address. Plaintiff should also notify Defendant or the attorney for Defendant of his new address.

(6)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  As

local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendant's counsel by regular mail.  In addition, Plaintiff must serve copies of all documents by regular mail on any defendant who does not participate in electronic filing.

SO ORDERED at Hartford, Connecticut, this 5th day of June, 2024.

_/s Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE